SIXTH DIVISION
August 15, 2008

No. 1-07-2179

| | |
|---|---|
| BAIRD AND WARNER RESIDENTIAL SALES, INC., | ) Appeal from the<br>) Circuit Court of<br>) Cook County, Illinois |
|     Plaintiff-Appellant, | )<br>) No. 07 CH 11334 |
|         v. | )<br>) |
| PATRICIA MAZZONE and MIDWEST REALTY VENTURES, LLC, d/b/a Prudential Preferred Properties, | )<br>) The Honorable<br>) Andrew Berman and Peter Flynn,<br>) Judges Presiding. |
|     Defendants-Appellees. | |

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiff Baird & Warner Residential Sales, Inc. (Baird & Warner), filed a three-count complaint against defendants Patricia Mazzone (Mazzone) and Midwest Realty Ventures, LLC, d/b/a Prudential Preferred Properties (Prudential), alleging breach of contract against Mazzone, tortious interference with contract against Prudential, and tortious interference with prospective economic advantage against both defendants. Defendants filed a motion to dismiss under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2006)), which the trial court granted in part. Plaintiff petitioned for leave to appeal under Supreme Court Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1)), contending that the trial court erred in: (i) holding the nonsolicitation covenant between Mazzone and plaintiff unenforceable on its face and as a matter of law; and (ii) refusing to modify the covenant in order to make it enforceable. We granted plaintiff's petition, and for the following reasons, we reverse the judgment of the trial court and remand the matter for further proceedings.

BACKGROUND

On April 25, 2007, plaintiff filed a verified complaint for injunctive and other relief against Mazzone and Prudential. Count I of the complaint alleged breach of contract against Mazzone, count II alleged tortious interference with contract against Prudential, and count III charged tortious interference with prospective economic advantage against both defendants.

The complaint alleged the following facts. Plaintiff Baird & Warner is an independent real estate broker in Illinois, with 1,700 real estate agents operating out of over 30 offices in the Chicagoland area. Plaintiff's "most valuable asset" is its sales agents, and the recruitment process is very time consuming, taking on average from one to three years after the first contact. The sales agents, however, are independent contractors "who are free to affiliate with whatever broker provides them with the best managerial and administrative support and compensation." In November 1996, plaintiff hired Mazzone as the manager of its Lincoln Park office, which at the time the complaint was filed had 100 sales agents and generated approximately $441 million in annual sales.

On April 1, 2006, plaintiff and Mazzone entered into a "Sales Manager Compensation Agreement," which provided in pertinent part as follows (formatting omitted):

"This Compensation Agreement is made *** between

[plaintiff] ('Company'), and *** Mazzone ('Sales Manager')

regarding the Lincoln Park Office.

* * *

Now therefore, *** the parties agree as follows:

1. Sales Office. Company is employing Sales Manager to

manage its Lincoln Park office.

* * *

5. Non Solicitation Promise. In consideration of Sales Manager's continued employment, Sales Manager agrees that during the time of Sales Manager's employment with Company, and for a period of one (1) year after the termination of Sales Manager's employment, whether voluntary or involuntary, Sales Manager shall not, except on behalf of Company, either directly or indirectly, solicit or accept if offered with or without solicitation, on Sales Manager's own behalf or on behalf of any other person or entity, the services of any person who is a current employee of or Independent Contractor with Company (or was an employee of or Independent Contractor with Company during the six (6) months preceding such solicitation), nor induce or encourage any of Company's current employees or Independent Contractors to terminate employment or an engagement with Company, nor agree to hire any of Company's current employees or Independent Contractors (or any individual who was associated with Company during the six (6) months preceding such hire) into employment or association with Sales Manager or any other person or entity.

6. Severability. If any provision of this Agreement is held to be illegal or unenforceable in whole or in part, such provision or section of provision will be severable and the remaining provisions

3

and sections will remain in full force and effect."

On March 30, 2007, Mazzone resigned from her position as sales manager for plaintiff's Lincoln Park office. Shortly thereafter, she joined Prudential as the managing broker of Prudential's Michigan Avenue office.

On April 26, 2007, the day after filing its verified complaint, plaintiff filed a motion for temporary restraining order and preliminary injunction, seeking to enjoin defendants from "decimating [plaintiff's] Lincoln Park office staff of real estate employees and agents." Among other things, plaintiff asked the court to enjoin Mazzone and Prudential for a period of one year from "directly or indirectly soliciting or accepting the services of any person *** who is an employee or agent of [plaintiff]" or who was an employee or agent of plaintiff during the six months preceding Mazzone's resignation from plaintiff.

On April 27, 2007, the trial court held a hearing on plaintiff's motion for a temporary restraining order and preliminary injunction, whereby plaintiff explained to the trial court that the relief it was seeking was to "prevent *** Mazzone and Prudential *** from soliciting Baird & Warner's agents or employees or from hiring them. So that what that means is Baird & Warner, what we're asking, that Baird & Warner's agents not be permitted to be hired by *** Mazzone to work under *** Mazzone in that office." After the trial court expressed concern that the requested relief was unreasonably broad, plaintiff explained to the trial court that under the "easiest" case, "Mazzone cannot solicit or hire directly any of Baird & Warner's agents and employees." The trial court subsequently granted Baird & Warner's motion in part, enjoining Mazzone from directly or indirectly soliciting "any person" who was an employee or agent of "Baird & Warner" or who had been an employee or agent during the six months preceding Mazzone's resignation from Baird &

4

Warner, on behalf of herself or any other entity. The trial court denied the rest of Baird & Warner's motion and ordered discovery to be completed on an expedited basis.

On June 1, 2007, defendants filed a motion to dismiss under section 2-615 of the Code, contending that the complaint failed as a matter of law because the nonsolicitation covenant was "unreasonable, overly broad and unenforceable as a matter of law." Defendants argued that Baird & Warner was "in essence, seeking to impose an employment 'poison pill' on Mazzone, so that [Baird & Warner] can preclude an employer from hiring any [Baird & Warner] employees or its 1,700 independent contractors if that employer hires one manager from one office–Mazzone." Defendants further argued that Baird & Warner sought to prevent "any" of its employees or "1,700 independent contractors or agents" from being able to join Prudential.

On June 22, 2007, Baird & Warner filed its response, arguing that, "[a]s the very first sentence of the Agreement confirms, its terms are specific to the Lincoln Park office." Baird & Warner further confirmed in its response that should there be any ambiguity with respect to the scope of the agreement, "Baird & Warner affirmatively represents that it will not seek to enforce the nonsolicitation covenant beyond its Lincoln Park office." Finally, Baird & Warner argued in the alternative that, if the nonsolicitation covenant was overbroad, the trial court should modify or sever the covenant from the rest of the agreement.

On July 6, 2007, the trial court held a hearing on defendants' motion to dismiss. During the hearing, the trial court asked plaintiff's counsel whether plaintiff was conceding that the original scope of the nonsolicitation covenant was overbroad. Plaintiff's counsel responded as follows:

"MS. BARTELL [plaintiff's counsel]: *** Your Honor,
while we don't concede that it is overbroad as to the entire company,

5

what we have done is refine the scope in which we're seeking to enforce this agreement.

We obviously have a lot of water under the bridge from the original complaint. We *** can be very clear with the Court that we are only seeking to enforce it with respect to the Lincoln Park office."

On July 9, 2007, the trial court issued an order granting defendants' motion to dismiss. In its order, the trial court specifically noted that the agreement defined "Company" as "Baird & Warner Residential Sales, Inc.," and stated that, "[b]y its plain terms, [the agreement] is not, as argued by [Baird & Warner], limited to only employees or agents of the Lincoln Park office." The trial court then dismissed with prejudice Prudential's claims regarding the nonsolicitation covenant as to all parties as well as those regarding the breach of confidentiality provision against Mazzone, but dismissed without prejudice the claim regarding the breach of the confidentiality provision against Prudential. Finally, the trial court declined to "blue pencil" the agreement, stating in effect that to do so would discourage precise drafting of agreements.

On August 7, 2007, plaintiff petitioned this court for leave to appeal under Supreme Court Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1)), and on August 15, 2007, we granted plaintiff's petition.


ANALYSIS

Plaintiff first contends that the trial court erred in granting defendants' motion to dismiss under section 2-615 of the Code. Specifically, plaintiff claims that the nonsolicitation covenant was not unreasonable as a matter of law and that the trial court improperly drew inferences in favor of the moving party (here, defendants).

6

No. 1-07-2179

We review *de novo* the trial court's dismissal of a complaint pursuant to section 2-615 of the Code. *Young v. Bryco Arms,* 213 Ill. 2d 433, 440 (2004). In reviewing the sufficiency of a complaint, a court must accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts while viewing all allegations in the light most favorable to the plaintiff. *Young,* 213 Ill. 2d at 441. As a result, a motion to dismiss pursuant to section 2-615 should not be granted unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). Nonetheless, Illinois is a fact-pleading state, and conclusions of law and conclusory factual allegations unsupported by specific facts are not deemed admitted. *Time Savers, Inc. v. LaSalle Bank, N.A.*, 371 Ill. App. 3d 759, 767 (2007).

Postemployment restrictive covenants operate as partial restrictions on trade, and as a result, Illinois courts carefully scrutinize them. *Cambridge Engineering, Inc. v. Mercury Partners 90 BI, Inc.*, 378 Ill. App. 3d 437, 447 (2007). A restrictive covenant may be held valid and enforceable if its terms are " 'reasonable and necessary to protect a legitimate business interest of the employer.' " *Cambridge Engineering*, 378 Ill. App. 3d at 447, quoting *Lawrence & Allen, Inc. v. Cambridge Human Resource Group, Inc.*, 292 Ill. App. 3d 131, 138 (1997). Whether a restrictive covenant is reasonable is a question of law. *Arpac Corp. v. Murray*, 226 Ill. App. 3d 65, 75 (1992). Factors for a court to consider include the hardship caused to the employee, the effect upon the general public, the geographic and temporal scope of the restrictions, as well as the activities restricted, all of which necessarily turn on the facts of the case. *Cambridge Engineering*, 378 Ill. App. 3d at 447; *Arpac*, 226 Ill. App. 3d at 75-76.

At the outset, we question whether a section 2-615 motion to dismiss is an appropriate

7

vehicle to decide issues that are essentially very fact-intensive, since section 2-615 restricts the trial court to the "four corners of the complaint." *Krueger v. Lewis*, 342 Ill. App. 3d 467, 471 (2003). Next, the parties argue over what plaintiff calls an ambiguity in the contract. In its brief to this court, plaintiff points out that the "preface" of the agreement states that it applies to the "Company" and Mazzone "regarding the Lincoln Park Office." Therefore, according to plaintiff, the preface limits the scope of the entire agreement (including the nonsolicitation provision) to the Lincoln Park office. In addition, in its response to defendants' motion to dismiss and at the hearing on that motion, plaintiff stated that it was only seeking to enforce the agreement as to the Lincoln Park office, although plaintiff did not concede that the provision would be overly broad if applied to all of Baird & Warner. Nonetheless, the trial court, without directly saying so, resolved this legal issue by regarding the agreement as applying to all 30 Baird & Warner offices and their 1,700 employees. However this ambiguity was resolved (*i.e.*, either applying only to the Lincoln Park office or company-wide), there is insufficient evidence to support a finding that the agreement was overly broad.

The nonsolicitation covenant in this case prohibits Mazzone from soliciting or hiring Baird & Warner's agents and employees at large or just from the Lincoln Park office for one year (or those agents and employees who had worked at Baird & Warner during the prior six months). Plaintiff argues to this court that it is only seeking to enforce the provision with respect to its Lincoln Park office, despite the fact that the covenant is with the "Company," which is defined in the agreement as "Baird & Warner Residential Sales, Inc.", and which plaintiff admits in its pleadings comprises *all* of plaintiff's 30 offices and 1,700 agents and employees. It appears, however, that Mazzone is free to solicit or hire any non-Baird & Warner agent or employee prior to the one-year expiration of

8

the covenant. It also appears that Prudential can hire any agent or employee (even Baird & Warner's), provided that Mazzone does not solicit or hire the agent or employee, nor encourage or agree to hire the agent or employee. We are unable to determine, however, neither the hardship that Mazzone would face nor the effect on the general public if the nonsolicitation covenant were enforced as to the Lincoln Park office and/or the entire company without additional evidence that does not appear on the face of the complaint. Because the record in this case does not provide enough information to weigh those factors, we are unable to determine the reasonableness of the restrictive covenant. As such, we cannot hold that the restrictive covenant is unreasonable as a matter of law, and therefore, we must hold that the trial court erred in granting defendants' section 2-615 motion to dismiss.

Nonetheless, defendants claim that enforcing the provision would "effectively render Mazzone unemployable in the entire area," citing *North American Paper Co. v. Unterberger*, 172 Ill. App. 3d 410 (1988), as support for their claim. Defendants' reliance is misplaced.

*Unterberger* throws light on this issue. In *Unterberger*, the plaintiff's executive vice-president testified that the "specific" area described by the noncompetition provision at issue would cover "about one-third of the United States and numerous major cities," and that the "nonspecific" area prohibiting direct or indirect competition with the plaintiff would encompass "all 50 states." *Unterberger*, 172 Ill. App. 3d at 413. That provision was held to be overly broad, unenforceable, and against public policy. *Unterberger*, 172 Ill. App. 3d at 414. In this case, the nonsolicitation provision does not have the same geographic reach and does not appear to prohibit Mazzone from soliciting any other realtor's agent or employee–in fact, it may only include 100 agents in one location. Therefore, *Unterberger* is unsupportive of defendants' claim that enforcement of the

nonsolicitation provision would render Mazzone unemployable. As such, we must reverse the judgment of the trial court.

Defendants, however, also claim that plaintiff waived its argument that the agreement is ambiguous with respect to whether it applies only to the Lincoln Park office or all of plaintiff's offices, and in the absence of waiver, we must construe ambiguous contracts against the drafter (here, Baird & Warner). We disagree.

At the outset, it is well established that waiver is a limitation on the parties, not on this court. *Price v. Philip Morris, Inc.*, 219 Ill. 2d 182, 346-47 (2005). Furthermore, in spite of their waiver argument, defendants admit that plaintiff raised this matter in its response to defendants' motion to dismiss. Finally, although we agree with defendants' statement that we must construe ambiguous provisions in a contract against the drafter (see, *e.g.*, *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 479 (1998)), that doctrine does not advance defendants' claim. Even construing the nonsolicitation provision to include all of plaintiff's offices does not answer the question of whether the nonsolicitation provision is unreasonable as a matter of law. As noted above, we simply do not have enough evidence in the record to determine the hardship that Mazzone would face nor the effect on the general public if the nonsolicitation covenant were enforced without additional evidence that does not appear on the face of the complaint. As plaintiff points out, Mazzone is free to solicit perhaps thousands of other agents from other companies, and the agreement covers only one year after her employment with Baird & Warner. Accordingly, this matter must be remanded for further proceedings.

Notwithstanding our holding, we emphasize that we take no position with respect to the merit of any of the parties' claims. We merely hold that, accepting as true all well-pleaded facts and all

reasonable inferences that may be drawn from those facts and viewing all allegations in the light most favorable to plaintiff (*Young,* 213 Ill. 2d at 441), we cannot hold that *no* set of facts could be proved that would entitle plaintiff to recovery (*Marshall*, 222 Ill. 2d at 429). See also *Abbott-Interfast Corp. v. Harkabus*, 250 Ill. App. 3d 13, 20 (1993) ("only in extreme cases will a court find such an agreement invalid on its face"). Therefore, we find that the complaint is sufficient to survive a motion to dismiss under section 2-615 of the Code, and we must reverse the judgment of the trial court.

Because of our holding, we need not address plaintiff's alternative contention that the trial court erred in refusing to modify, or "blue pencil," the nonsolicitation covenant. Although we recognize that the one-year term of the agreement has passed, a prayer for damages, attorney fees, etc., survives and must ultimately be decided.

Accordingly, we reverse the judgment of the circuit court of Cook County and remand the matter for further proceedings not inconsistent with this opinion.

Reversed and remanded.

McBRIDE, P.J., and KARNEZIS, J., concur.