# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Northwest Podiatry Center, Ltd. v. Ochwat*, 2013 IL App (1st) 120458

---

| | |
|---|---|
| Appellate Court Caption | NORTHWEST PODIATRY CENTER, LTD., and GREGORY BRYNICZKA, Plaintiffs-Appellees, v. GARY OCHWAT and CRAIG W. HALIHAN, Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-12-0458 |
| Filed | May 8, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action to enforce a restrictive covenant after two podiatrists left plaintiffs' practice and started a competing practice, the privileges restriction in the covenant, without any time limitations, was greater than necessary to protect plaintiffs' business interests, and the imposition of a patient injunction without a temporal limitation on both defendants was an abuse of discretion, since there was no oral or written restriction preventing one defendant from soliciting his former or current patients and the restriction imposed by the court as to the second defendant created a restriction where none was contemplated by the parties; however, the trial court properly enjoined defendants from providing services to a third-party managed care provider with which plaintiffs had an agreement. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-27642; the Hon. Kathleen Pantle, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |

Counsel on Appeal

Robert H. Lang, of Thompson Coburn LLP, of Chicago, for appellants.

Gary P. Hollander and David Feldman, both of Strauss & Malk LLP, of Northbrook, for appellees.

Panel

JUSTICE HYMAN delivered the judgment of the court, with opinion.

Presiding Justice Neville and Justice Sterba concurred in the judgment and opinion.

## OPINION

¶ 1     Defendants, Dr. Gary Ochwat and Dr. Craig Halihan appeal from the trial court's grant of preliminary injunctive relief in favor of plaintiffs Northwest Podiatry Center, Ltd. (NPC), and Dr. Gregory Bryniczka to enforce the restrictive covenants contained in Dr. Halihan's employment agreement and because of defendants' breach of their fiduciary duties in setting up a competing business. Defendants contest the trial court's decision to enjoin them from doing business with a third-party managed care provider without any temporal limitation, arguing neither defendant was subject to a written restrictive covenant that would prohibit this activity. Defendants also argue the trial court erred in enjoining them from treating current or former NPC patients without temporal or geographic restrictions. Defendants take issue with the trial court's order that Dr. Halihan resign clinical privileges at certain restricted facilities by enforcing the privileges restriction in Dr. Halihan's employment agreement, a restriction the court found to be ambiguous. Alternatively, defendants argue that if the privileges restriction is found not to be ambiguous, it can only apply to 2 of the 10 restricted facilities. Defendants also argue injunctive relief was not proper when money damages as to defendants' alleged tortious interference were definable. Lastly, defendants contend the trial court erred in ruling that the corporate plaintiff's postbreach profitability was irrelevant.

¶ 2     We hold the trial court erred by entering a preliminary injunction prohibiting defendants from treating plaintiffs' patients and by enforcing an ambiguous restrictive covenant contained in one defendant's employment agreement.

¶ 3                              BACKGROUND

¶ 4     Northwest Podiatry Center, Ltd., is a closely held Illinois professional corporation that provides podiatric care to individuals with foot and ankle problems. Dr. Gregory Bryniczka, a podiatrist, founded NPC in 1974. Dr. Bryniczka is also the president and majority shareholder of NPC, as well as a director and trustee.

¶ 5     NPC has six office locations: Niles, Wheaton, Aurora, DeKalb, Streamwood and South Elgin. Each office has an office manager, most of whom are long-term employees of NPC.

Debra Fickenscher was the office manager of the Streamwood office for 12 years. Christine Nudo was an employee of NPC for 10 years, 5 of which she was an office manager.

¶ 6    Dr. Ochwat worked at NPC for over 20 years. Dr. Ochwat was a vice-president, member of the board of directors and employee at NPC. Dr. Ochwat owned 400 of the 1,086 issued and outstanding shares of NPC, about 37%. Dr. Ochwat had no restrictive covenants with NPC.

¶ 7    Dr. Halihan began his employment with NPC in September 2006. Before starting, on June 15, 2006, Dr. Halihan signed an employment agreement with NPC. The contract contained three separate restrictions: a noncompetition clause, a privileges restriction, and a solicitation restriction:

### Noncompete Clause

"PHYSICIAN covenants and agrees that he shall not enter into a 'competitive practice' (as hereafter defined) at any time during the period beginning on the first day of employment and ending thirty-six (36) months after the date on which his employment terminates. The term 'competitive practice' shall mean the full-time or part-time practice of podiatric medicine, directly or indirectly, alone or with another person or person, partnership, corporation, or any other entity within a five (5) mile radius of the Offices or any office of CORPORATION."

### Privileges Restriction

"PHYSICIAN further covenants and agrees that should he leave the employ of CORPORATION that he will surrender his clinical privileges at any hospital or ambulatory surgical treatment center at which an employee of CORPORATION then holds clinical privileges."

### Solicitation Restriction

"PHYSICIAN further agrees that he will not, directly or indirectly for himself or on behalf of any other person, partnership, corporation, or any other entity solicit, divert or take away business or patronage of the CORPORATION during the term of PHYSICIAN's employment and for thirty-six (36) months thereafter, whether or not he has paid CORPORATION for the privilege of entering into a competitive practice (as defined above)."

The employment agreement had a three-year term with a provision that the term could be extended "by mutual consent." The parties never entered into a written extension of the employment agreement.

¶ 8    In March 2010, Dr. Ochwat told Dr. Bryniczka that he would be retiring and moving to California. On April 19, 2010, Dr. Halihan submitted his letter of resignation to NPC, effective June 30, 2010. Dr. Ochwat and Dr. Halihan left NPC and now work at Advanced Foot and Ankle Specialists (AFA), started by Dr. Ochwat in 2010. AFA's two offices are located in Hoffman Estates and Elgin.

¶ 9    Ms. Fickenscher ended her employment with NPC on June 22, 2010, to work for AFA in both its offices. Ms. Nudo also left her employ with NPC to work for AFA.

¶ 10    NPC sought injunctive relief claiming Dr. Ochwat and Dr. Halihan breached their fiduciary duties to NPC by engaging in secret dealings, setting up AFA, soliciting other employees to terminate their employment with NPC, misappropriating NPC patient records, and inducing Northwest Suburban Independent Practitioner's Association (IPA) to terminate its agreement with NPC. Plaintiffs also alleged Dr. Halihan violated postemployment restrictive covenants.

¶ 11    On June 30, 2010, the trial court granted, in part, plaintiffs' motion for a temporary restraining order, enjoining defendants from treating any individual who was a current or former patient with NPC from January 1, 2009, through June 30, 2010. Defendants did not appeal from the temporary restraining order.

¶ 12    The trial court held a hearing to determine whether to grant plaintiffs' request for a preliminary injunction. On August 9, 2010, the trial court limited discovery in the case, prohibiting defendants from conducting discovery regarding plaintiffs' lost profits and money damages. Later, the court granted defendants' motion for a clarifying order, allowing discovery to proceed on all issues. Defendants served subpoenas on NPC's certified public accountant, Ronald Dell, and NPC's outside counsel, James Huck, whose firm drafted Dr. Halihan's employment agreement. Plaintiffs successfully stayed the depositions. Defendants filed a discovery motion to compel on May 26, 2011, which was denied. Defendants were unable to pursue any information relating to the financial impact of their conduct on NPC before the trial court's issuance of the preliminary injunction.

¶ 13    On January 17, 2012, the trial court granted most of the injunctive relief sought by plaintiffs. The trial court held NPC was entitled to enforce the restrictive covenants in Dr. Halihan's employment agreement and found that the breaches of fiduciary duties by both defendants were ongoing and, thus, warranted injunctive relief.

¶ 14    The trial court determined that because NPC is a closely held corporation and Dr. Ochwat was a 37% shareholder, as well as an officer, director and trustee, he "owed a fiduciary duty to the principals of NPC to deal fairly, honestly, and openly." The trial court held the fiduciary relationship prohibited "all forms of trickery, secret dealings, and preference for self in matters related to and connected with the principal's business."

¶ 15    The trial court found Dr. Ochwat began "conspiring" with Dr. Halihan to form AFA in January and February 2010, in violation of their fiduciary duties to NPC. In March 2010, Dr. Ochwat informed Dr. Bryniczka he intended to resign. In doing so, Dr. Ochwat led Dr. Bryniczka to believe that he was going to retire and move to California, not start a competing practice. The trial court found it significant that Dr. Ochwat never informed Dr. Bryniczka of his intentions, even though he was laying the groundwork for his competing practice at the time. Dr. Ochwat solicited NPC employees as early as January or February of 2010, including Ms. Fickenscher, Ms. Nudo, and Dr. Michael DiChoso, who chose to remain employed by NPC. Dr. Ochwat informed 40 to 50 NPC patients about his intent to start a competing practice. The trial court further found Dr. Ochwat misused corporate assets, employee time, and company equipment to set up AFA.

¶ 16    The trial court found Dr. Ochwat interfered with the contract NPC had with Northwest

Suburban Independent Practitioner's Association, a managed care provider that supplies groups of individuals with medical care and then subcontracts some of that care to specialized medical providers like NPC. In each contract term, IPA only contracts with one professional corporation that provides podiatry services in the northwest suburbs. On May 1, 2008, NPC entered into a participating physician agreement with IPA to provide podiatric services. NPC received about $300,000 in annual revenues from the agreement. The initial term of the agreement was one year, with automatic one-year renewals unless the agreement was terminated. On May 28, 2010, IPA sent a notice terminating the agreement with NPC, effective September 1, 2010. IPA stated the termination was not due to any failing on behalf of NPC. The trial court held Dr. Ochwat tried to "usurp NPC's corporate opportunity with IPA by undercutting the capitation amount charged by NPC." Dr. Ochwat used information he learned in his capacity as an officer of NPC to offer podiatry services through AFA to IPA at a lower rate than NPC charged. Eventually Dr. Ochwat suggested IPA continue its relationship with NPC, but only after he was confronted with potential liability for his interference.

¶ 17    Defendants raised several challenges to the enforceability of Dr. Halihan's employment agreement. Defendants argued the employment agreement ended before Dr. Halihan's departure from NPC. Paragraph 10 of the employment agreement provides that the agreement "may be renewed for additional twelve (12) month periods by mutual consent of the parties" and that the agreement "may be terminated at any time by mutual written agreement by the parties."

¶ 18    The trial court found Dr. Bryniczka testified credibly that the parties extended the employment agreement according to its terms. In the summer or fall of 2009, NPC offered Dr. Halihan the opportunity to buy into the practice; Dr. Halihan requested time to consider the proposal. Dr. Bryniczka testified that at that time, he discussed with Dr. Halihan the extension of his employment agreement. Dr. Bryniczka testified Dr. Halihan acknowledged, with a head nod, his comment that if Dr. Halihan did not want to buy into the practice, he could continue to be an employee by extending his employment agreement. The trial court held the extension of the employment agreement was not required to be in writing by the plain terms of the agreement; writing was only necessary when the parties mutually agreed to terminate the agreement.

¶ 19    The trial court held Dr. Halihan "conspired" with Dr. Ochwat to breach fiduciary duties. The original and all copies of Dr. Halihan's employment agreement disappeared from NPC's offices. When plaintiffs sought a temporary restraining order, Dr. Halihan filed an affidavit denying the existence of the employment agreement. Later, when asked about the employment agreement, defendants took the fifth amendment. The trial court held that based on the facts, it was reasonable to conclude Dr. Halihan conspired with Dr. Ochwat to destroy the employment agreement. Plaintiffs were able to obtain a copy of the employment agreement because it was submitted by Dr. Halihan during his deposition in connection with unrelated litigation.

¶ 20    The trial court relied on other evidence, including Dr. Halihan's own correspondence, to

support its conclusion that the employment agreement was extended. Dr. Halihan referenced the terms of the employment agreement in letters he signed when he notified NPC in the spring of 2010 that he was terminating his employment. The trial court held Dr. Halihan's denial that he agreed to extend the employment agreement lacked credibility. The trial court found it significant that Dr. Halihan lied about the existence of the employment agreement in response to the plaintiffs' petition for a temporary restraining order. The trial court concluded that had Dr. Halihan actually believed the employment agreement did not apply because it had expired on its own terms, he would not have lied about its existence.

¶ 21    The defendants also challenged the enforceability of the restrictive covenants. The trial court held the time restriction of 36 months was reasonable, holding the plaintiffs offered credible evidence that it takes NPC at least three years to establish the patient base at each of its offices. The trial court also found reasonable the geographic restriction of a five-mile radius. The trial court held that given the heavily populated Chicago metropolitan area, restricting Dr. Halihan from practicing medicine within the five-mile radius did not deprive him of employment.

¶ 22    The parties also disputed the privileges restriction in Dr. Halihan's employment agreement. Defendants argued the restrictive covenant is ambiguous because it does not have a temporal component. The trial court agreed and allowed both sides to present evidence to determine the intent of the parties. Plaintiffs introduced the testimony of Dr. Brynczka, who stated that all three restrictive covenants were intended to be bound by the 36-month temporal limitation. Defendants did not offer their own testimony to counter Dr. Brynczka's. The trial court found plaintiffs' evidence was credible and held that the 36-month temporal limitation applied to the privileges restriction as well.

¶ 23    Alternatively, defendants contended the restrictive covenant should not have been enforced because plaintiffs committed a material breach of the employment agreement because of a billing practice they used. Defendants characterized the billing practice as the "Adam Billing Practice."[1] Plaintiffs, on the other hand, characterized it as the "new doctor billing practice." The billing practice involves billing Medicare and insurers for services performed by new doctors under the names of doctors who have billing numbers. Each individual doctor receives a billing number, which can take months to receive. If the billing practice is not employed, the new doctor must wait until her or she receives a billing number and then it can be applied retroactively to a date chosen by NPC, either the doctor's start date or the first date he or she rendered services at the office for which the billing number applied.

¶ 24    The trial court held the billing practice did not constitute a material breach of Dr. Halihan's employment agreement or the unclean hands doctrine. The evidence showed the billing practice had been used for years with the knowledge and consent of Dr. Ochwat, and that Dr. Ochwat was responsible for the billing and coding at NPC. The trial court held Dr. Bryniczka testified credibly that he and Dr. Ochwat established the new doctor billing

---

[1]"Adam" refers to Dr. Adam Bryniczka, Dr. Gregory Bryniczka's son, who joined NPC after Dr. Halihan.

practice together. Dr. Bryniczka testified that together they made inquiries to confirm the practice was acceptable. The court also held Dr. Halihan was familiar with the practice because he used it at a previous place of employment and never objected to its use at NPC. The trial court held, "[i]t is apparent from all the evidence that Defendants are raising the new doctor billing practice as an after-the-fact justification against their own wrongful conduct even though the new doctor billing practice had nothing whatsoever to do with their conscious and deliberate decision to form AFA and improperly compete with NPC." The trial court rejected defendants' argument that the billing practice was a material breach of Dr. Halihan's employment agreement and their contention that the doctrine of unclean hands applied.

¶ 25    The trial court held NPC was entitled to enforce the restrictive covenants contained in Dr. Halihan's employment agreement. The court found the breaches of fiduciary duties were ongoing and that the temporary restraining order is all that prevented the defendants from actively soliciting patients from NPC. But, the trial court denied plaintiffs request to have Dr. Ochwat "prohibited from soliciting, hiring, or entering into business with any current or former employees of NPC, including Dr. Halihan." The trial court held the balance of hardships favored Dr. Halihan, finding NPC would suffer minimal, if any, hardship if Dr. Halihan continued his employment with AFA, especially in light of the restrictive covenants enforceable against him.

¶ 26    The trial court entered the following relief:

"A. Dr. Ochwat and Dr. Halihan are prohibited, either directly or indirectly, individually or through any other person or entity including Advanced Foot and Ankle Specialists, from entering into any agreement with IPA or from treating any patients referred by IPA;

B. Dr. Ochwat and Dr. Halihan are ordered to return to NPC all records of patients of NPC, and are also ordered not to retain the originals or copies of such records;

C. Dr. Ochwat is prohibited from soliciting, hiring, or entering into business with any current or former employees of NPC, except Dr. Halihan, Ms. Fickenscher, and Ms. Nudo;

D. Dr. Ochwat and Dr. Halihan are prohibited from treating any current or former patients of NPC:

E. Dr. Halihan is prohibited from soliciting, hiring, or entering into business with any current or former employees of NPC, except Dr. Ochwat, Ms. Fickenscher, and Ms. Nudo;

F. Dr. Halihan is ordered to resign his clinical privileges at the Restricted Facilities; and

G. Dr. Halihan is prohibited from engaging in the practice of podiatric medicine, directly or indirectly, alone or with any other person or entity, within a five-mile radius of any NPC office, for a period of three year from June 30, 2010."

¶ 27    Defendants timely appealed.

¶ 28                                          ANALYSIS

¶ 29        In reviewing an order granting or denying a preliminary injunction, " 'we examine only whether the party seeking the injunction has demonstrated a *prima facie* case that there is a fair question concerning the existence of the claimed rights.' " *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 62 (2006) (quoting *People ex rel. Klaeren v. Village of Lisle*, 202 Ill. 2d 164, 177 (2002)). In doing so, we will only reverse where the trial court abused its discretion in holding as it did. *Mohanty*, 225 Ill. 2d at 63. Whether injunctive relief should be granted to enforce a restrictive covenant not to compete in an employment contract depends on the validity of the covenant, the determination of which is a question of law. *Mohanty*, 225 Ill. 2d at 62 (citing *Retina Services, Ltd. v. Garoon*, 182 Ill. App. 3d 851, 856 (1989)).

¶ 30        A preliminary injunction is not meant to resolve the merits of the case, but to preserve the status quo until the merits can be decided. *Mohanty*, 225 Ill. 2d at 80. The party seeking the preliminary injunction must establish four factors before the injunction will be granted: "(1) a clearly ascertained right in need of protection, (2) an irreparable injury in the absence of an injunction, (3) no adequate remedy at law, and (4) a likelihood of success on the merits." *Mohanty*, 225 Ill. 2d at 62 (citing *People ex rel. Klaeren v. Village of Lisle*, 202 Ill. 2d 164 (2002), and *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk & Western Ry. Co.*, 195 Ill. 2d 356, 365 (2001)). The court must also determine if the balance of hardships to the parties supports the grant of a preliminary injunction. *Keefe-Shea Joint Venture v. City of Evanston*, 332 Ill. App. 3d 163, 169 (2002).

¶ 31        In opposition of a preliminary injunction, defendants raised various challenges to the validity and enforceability of the restrictive covenants in Dr. Halihan's employment agreement. The trial court rejected the defendants' challenges. On appeal, defendants again contend plaintiffs are not entitled to a preliminary injunction to enforce the restrictive covenants. Defendants contend Dr. Halihan's employment agreement was not extended after it expired by its written terms. Alternatively, defendants contend that if the employment agreement was in place, plaintiffs materially breached the employment agreement, thereby relieving defendants of their obligations under the restrictive covenants. Defendants also contend the restrictive covenants in Dr. Halihan's employment agreement may not be enforced because they are overly broad in their temporal and activity restrictions and, thus, unreasonable. Specifically, defendants contend the trial court erred by (1) requiring Dr. Halihan to resign clinical privileges at 10 restricted facilities by enforcing a restriction the trial court found to be ambiguous; (2) enjoining defendants from treating any current or former patients of NPC without any temporal or geographical restrictions; and (3) enjoining defendants from doing business with IPA without any temporal limitations.

¶ 32                        Expiration of Dr. Halihan's Employment Agreement

¶ 33        Dr. Halihan's employment agreement has a three-year term. Plaintiffs admitted that the employment agreement was to terminate by its written terms in May 2009. No written extension of the employment agreement was made. Defendants argue Dr. Halihan's refusal

to become a partner at NPC does not constitute an extension of his employment agreement. Plaintiffs cite Dr. Halihan's 2010 letters and his affidavit to support their claim that the parties extended Dr. Halihan's employment agreement. Defendants argue the letters and affidavit are irrelevant because they were not in existence until after September 1, 2009, the termination date of Dr. Halihan's employment agreement and, therefore, could not have extended the agreement. Defendants contend that Dr. Halihan's employment agreement could not be extended except by written agreement signed by NPC and Dr. Halihan, which did not occur.

¶ 34   We are unpersuaded by defendants reliance on *Bisla v. Parvaiz*, 379 Ill. App. 3d 567 (2008), and *Marhawa v. Woodridge Clinic, S.C.*, 339 Ill. App. 3d 291 (2003), as support for their argument that because an employment agreement must be extended before its termination for its restrictive covenants to be enforceable, that the restrictive covenants contained in Dr. Halihan's employment agreement are not enforceable having not been timely extended. Neither case is factually similar. *Bisla* and *Marhawa* address only a situation where the employment agreement was terminated and, therefore, its noncompetition restrictions were no longer effective. Here, the trial court held the employment agreement had not terminated when plaintiffs sought to enforce the restrictive covenants against Dr. Halihan.

¶ 35   Based on the evidence of record, we cannot say the trial court abused its discretion in finding Dr. Halihan's employment agreement was extended by "mutual consent" as required by the plain terms of the agreement and that although other portions of the agreement required written notice, the extension provision of the agreement does not require written notice.

¶ 36                                Privileges Restriction

¶ 37   Defendants argue the trial court improperly allowed parole evidence to supply "missing terms," *i.e.*, temporal and geographical limitations, which makes this case different from those cited by plaintiffs in which the evidence was admitted to construe the specific, albeit ambiguous, language of the restriction. We agree.

¶ 38   Illinois courts carefully examine postemployment restrictive covenants because they operate as partial restrictions on trade. *Cambridge Engineering, Inc. v. Mercury Partners 90 BI, Inc.*, 378 Ill. App. 3d 437, 447 (2007). To be found valid and enforceable, the terms of the restrictive covenant must be " 'reasonable and necessary to protect a legitimate business interest of the employer.' " *Cambridge Engineering*, 378 Ill. App. 3d at 447 (quoting *Lawrence & Allen, Inc. v. Cambridge Human Resource Group, Inc.*, 292 Ill. App. 3d 131, 138 (1997)). Whether a restrictive covenant is reasonable is a question of law we review *de novo*. *Mohanty*, 225 Ill. 2d at 63. In doing so, we consider factors, including the hardship caused to the employee, the effect on the general public, the geographic and temporal scope of the restrictions, and the activities restricted. *Cambridge Engineering*, 378 Ill. App. 3d at 447. Courts strictly construe and interpret covenants not to compete, and any doubts or ambiguities must be resolved against the restrictions. *Marwaha v. Woodridge Clinic, S.C.*,

339 Ill. App. 3d 291, 293 (2003); *Bloomington Urological Associates, SC v. Scaglia*, 292 Ill. App. 3d 793, 798 (1997).

¶ 39    Although the lower court's judgment in granting or denying a preliminary injunction "is accorded great deference, it must still be exercised within the established legal framework for injunctive relief." *Kanter & Eisenberg v. Madison Associates*, 144 Ill. App. 3d 588, 591 (1986) (citing *Alexander v. Standard Oil Co.*, 53 Ill. App. 3d 690, 698 (1977). "A restrictive covenant, assuming it is ancillary to a valid employment relationship, is reasonable only if the covenant: (1) is no greater than is required for the protection of a legitimate business interest of the employer-promisee, (2) does not impose undue hardship on the employee-promisor, and (3) is not injurious to the public." *Reliable Fire Equipment Co. v. Arredondo*, 2011 IL 111871, ¶ 17. An employer seeking to enforce the restrictive covenant bears the burden of showing that the full extent of the restriction is necessary to protect its legitimate business needs. *Health Professionals, Ltd. v. Johnson*, 339 Ill. App. 3d 1021, 1034 (2003).

¶ 40    Restrictive covenants are to be strictly construed and interpreted by the courts and any ambiguities should be resolved against the restriction. *Hagerty, Lockenvitz, Ginzkey & Associates v. Ginzkey*, 85 Ill. App. 3d 640, 643-44 (1980). "[B]ecause words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others.*" Gallagher v. Lenart*, 226 Ill. 2d 208, 233 (2007). It is improper to determine the parties' intent by looking at a contract clause or provision in isolation. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011).

¶ 41    Whether a contract term is ambiguous and in need of construction is a question of law. *Cambridge Engineering, Inc. v. Mercury Partners 90 BI, Inc.*, 378 Ill. App. 3d 437, 450 (2007). Only when terms are open to more than one interpretation, extrinsic evidence is admissible to determine the true intent of the parties. *Cambridge Engineering, Inc.*, 378 Ill. App. 3d at 450. Contract language that is unambiguous must be given its plain and ordinary meaning. *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007).

¶ 42    The trial court found the language of the privileges restriction ambiguous and, therefore, allowed the parties to present parole evidence as to their intent. The trial court accepted plaintiffs' evidence that the parties intended the 36-month restriction also to apply to the privileges restriction. Ultimately, however, the trial court held the privileges restriction contained in Dr. Halihan's employment agreement required Dr. Halihan to "resign his clinical privileges at the Restricted Facilities."

¶ 43    Defendants contend the trial court should not have modified the restriction, but instead, should have determined whether to enforce it as it was written. We agree with defendants that as written, the privileges restriction is overbroad because it does not contain a temporal limitation. The contract language unambiguously supports defendants' interpretation that when written, plaintiffs intended the privileges restriction not to contain a temporal limitation.

¶ 44    The privileges restriction is set out in its own separate sentence in the employment agreement. There is no reference to any temporal restriction within that sentence. This stands

in stark contrast to references in both the competitive practice restriction and the solicitation restriction of both geographic and temporal limitations.

¶ 45 We reject the trial court's conclusion that the language of the privileges restriction was ambiguous on its face and, therefore, must now determine whether the language, as written, is reasonable to protect plaintiffs' legitimate business interests.

¶ 46 Restrictive covenants "should be narrowly tailored to protect only against activities that threaten the employer's interest." *Lawrence & Allen, Inc. v. Cambridge Human Resource Group, Inc.*, 292 Ill. App. 3d 131, 140 (1997). Hence, the restrictive covenant will be found valid only if it is no broader than necessary to protect the employer's legitimate business interests. See *Reliable Fire Equipment Co.*, 2011 IL 111871, ¶ 17.

¶ 47 Applying this standard, we hold the privileges restriction, as it reads by its plain language, is greater than necessary to protect the legitimate business interest of plaintiffs and imposes an undue hardship on Dr. Halihan by requiring him to permanently resign all clinical privileges at the restricted facilities. Plaintiffs urge this court to read in to the restriction a temporal limitation based on the parole evidence, however, that is an impermissible rewriting of the covenant. See *Terry v. State Farm Mutual Automobile Insurance Co.*, 287 Ill. App. 3d 8, 14 (1997) ("It is the function and duty of the reviewing court to construe the contract and not to make a new contract under the guise of construction."). Plaintiffs have failed to show the restrictive covenant as it reads, without a temporal restriction, is necessary to protect its legitimate business interests. Accordingly, without a temporal restriction, the restrictive covenant is unreasonable as a matter of law.

¶ 48                                        NPC Patient Injunction

¶ 49 In the temporary restraining order, the trial court chose to impose a temporal limitation on the NPC patient injunction, applying it only to individuals who were NPC patients from January 1, 2009 through June 30, 2010. Defendants argue there is no rational reason the court applied a temporal limitation to the TRO, but did not extend it to the NPC patient injunction in the preliminary injunction. Alternatively, defendants argue the scope of the injunction is overly broad where there was no temporal limitation.

¶ 50 Plaintiffs contend the trial court properly enjoined defendants from soliciting NPC patients because of their breaches of fiduciary duties. Plaintiffs argue that only the temporary restraining order prevented defendants from soliciting NPC patients and, therefore, an injunction was necessary to preserve the status quo.

¶ 51 Defendants contend the restrictive covenants in Dr. Halihan's employment agreement cannot be read to prevent him from treating NPC patients whom he did not solicit. The applicable restriction in Dr. Halihan's employment agreement, stated, "Halihan cannot solicit NPC's 'business or patronage.' " Defendants argue the trial court used this restriction to impose a harsher restriction than the parties agreed to, the absolute bar of both defendants from treating current or former NPC patients. It is undisputed that Dr. Ochwat had no restrictive covenants.

-11-

¶ 52    The trial court held defendants intended to divert NPC patients to AFA when they told 40 to 50 patients of their intent and suggested follow-up visits for a time after defendants had left NPC. The court found only the temporary restraining order prevented this from occurring.

¶ 53    The decision to grant or deny injunctive relief lies within the trial court's sound discretion and its findings will not be disturbed absent an abuse of that discretion. *Mohanty*, 225 Ill. 2d at 63. We find the trial court abused that discretion here. Through the patient injunction, the trial court improperly imposed a restriction on both defendants to which they never agreed. Plaintiffs have offered no sufficient legal basis for the trial court's decision to do so.

¶ 54    Dr. Ochwat cannot be enjoined from treating former or current patients of NPC. There is no oral or written restriction in the record preventing him from doing so. A patient has a right to seek treatment from his or her doctor at the doctor's new place of employment unless that doctor is restrained by contract. There is no basis for the court's decision as it applies to Dr. Ochwat, and the court does not give one.

¶ 55    Concerning Dr. Halihan, the only plausible support for the trial court's decision to enjoin him from treating NPC patients is a court-modified version of the solicitation restriction contained in his employment agreement. The trial court used the solicitation restriction as a basis for fashioning an even more restrictive covenant, *i.e.*, the complete prohibition of treating all former and current NPC patients without any temporal limitation. Dr. Halihan's employment agreement says nothing about whether or not Dr. Halihan can treat former or current patients of NPC once his employment with NPC terminated. The parties made no agreement on this issue.

¶ 56    We recognize a court may modify a restrictive covenant that is overly broad to make it narrower. It is well established that "if the area covered by a restrictive covenant is found to be unreasonable as to area, it may be limited to an area which is reasonable in order to protect the proper interests of the employer and accomplish the purpose of the covenant." *Total Health Physicians, S.C. v. Barrientos*, 151 Ill. App. 3d 726, 730 (1986); see also *Lee/O'Keefe Insurance Agency, Inc. v. Ferega*, 163 Ill. App. 3d 997, 1006-07 (1987). Yet, this is not what the trial court did here. The court did not modify an overly broad restriction; rather, the court created its own patient restriction where none was contemplated by the parties. The trial court could have properly enjoined Dr. Halihan from soliciting patients for 36 months based on the solicitation restriction in his employment agreement; however, instead, the court enjoined both defendants from "treating any current or former patients of NPC," a restriction with no basis in the record. Hence, the patient injunction must be reversed.

¶ 57                                        IPA Injunction

¶ 58    Defendants also contend the trial court abused its discretion by entering the IPA injunction, without any temporal limitation, where money damages would have been adequate. Further, defendants contend there is no good reason the IPA injunction should

stand two years after defendants left their employ with NPC.

¶ 59    Plaintiffs alleged defendants tortiously interfered with their IPA contract. Defendants do not challenge that allegation for purposes of this appeal.

¶ 60    Generally, employees may plan, form, and equip a competing corporation while still working for their employer, but they may not begin competition. *Delta Medical Systems v. Mid-America Medical Systems, Inc.*, 331 Ill. App. 3d 777, 796 (2002). Additionally, absent fraud, a contractual restrictive covenant, or the improper taking of a customer list, former employees may compete with their former employers and solicit former customers as long as they did not take any action to do so before termination of their employment. *Delta Medical Systems*, 331 Ill. App. 3d at 796. This general rule, however, does not apply to corporate officers, who owe a fiduciary duty of loyalty to their corporate employer. *Veco Corp. v. Babcock*, 243 Ill. App. 3d 153, 160 (1993). In this situation, the corporate officer's termination of his former employment does not end potential liability for transactions that began, or were based on information learned, while the officer was employed. *Veco Corp.*, 243 Ill. App. 3d at 161.

¶ 61    The trial court has the authority to grant injunctive relief to the extent necessary to protect the plaintiff's rights. *Liebert Corp. v. Mazure*, 357 Ill. App. 3d 265, 287 (2005). In doing so, the court should seek to "prevent the defendant from gaining competitive advantage through the unlawful misappropriation." *Liebert Corp*, 357 Ill. App. 3d at 287.

¶ 62    Here, plaintiffs alleged, and the trial court found, that Dr. Ochwat used information he learned as a corporate officer of NPC to attempt to usurp NPC's contract with IPA. The trial court held Dr. Ochwat breached his fiduciary duty to the principals of NPC "to deal fairly, honestly, and openly." The court found Dr. Ochwat actively exploited NPC for his own personal gain, particularly in interfering, while still an officer, director, shareholder and trustee of NPC, with NPC's contract with IPA. Dr. Ochwat attempted to usurp NPC's contract with IPA by undercutting NPC's pricing. In order to do so, Dr. Ochwat used information he learned in his capacity as an officer with NPC. Based on the record, we hold the trial court did not abuse its discretion in granting the IPA preliminary injunction.

¶ 63                                CONCLUSION

¶ 64    For these reasons, we affirm, in part, reverse, in part, the trial court's January 17, 2012, order and remand for further proceedings. The trial court improperly ordered Dr. Halihan to resign his clinical privileges at the restricted facilities. The court further erred in enjoining defendants from treating any current or former patients of NPC. The trial court properly enjoined defendants from entering into any agreement with IPA.

¶ 65    Affirmed in part and reversed in part; cause remanded.

-13-